IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TRINIDAD LOPEZ,

Plaintiff, No. CIV S-02-0274 FCD GGH PS

vs.

CALIFORNIA DEPARTMENT OF MOTOR VEHICLES, et al.,

Defendants. FINDINGS AND RECOMMENDATIONS

_________________________________/

Introduction

Plaintiff is proceeding pro se on a second amended complaint. On February 3, 2005, defendants' motion for summary judgment, or in the alternative, motion for summary adjudication, filed on December 29, 2004, came on for hearing. The court denied plaintiff's request for an extension of time under Fed. R. Civ. P. 56(f) but granted Lopez 10 days to file opposition papers. Plaintiff filed her opposition on February 11, 2005 to which defendant replied on February 24, 2005. Defendant also filed objections to plaintiff's evidence on that same day. After review of plaintiff's opposition, which did not comply with court rules, the court ordered that the parties supply further information by April 19, 2005 concerning an administrative report prepared by an EEO officer at DMV. Defendants complied; plaintiff filed an unserved letter

request for extension of time, which the court granted on account of plaintiff's pro se status. Plaintiff then timely filed her declaration on May 16, 2005.

For the reasons set forth herein, this case should be dismissed for lack of jurisdiction.

Procedural Violations

Although this case must ultimately be dismissed on jurisdictional grounds, the court notes plaintiff's procedural violations for the record. First, plaintiff did not timely file an opposition. Second, plaintiff did not follow the rules setting forth her version of the disputed and undisputed facts. Third, plaintiff submitted unauthenticated evidentiary materials. On the merits, plaintiff barely responds to the issues raised by defendants with the court being expected to supply the appropriate legal research. However, granting summary judgment to defendants on these grounds would surely invite reversal.

The Ninth Circuit has directed, in a pro se case involving summary judgment, that the court must search the record to determine whether any admissible evidence might be lurking in favor of the pro se party. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).[1] A pro se party does not necessarily have to produce evidence at opposition to summary judgment in a form that would be admissible at trial to survive summary judgment – evidence that could be transformed into admissible evidence at trial is good enough. Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

Given all these pro se directives, the undersigned uneasily reviews the motion, i.e., judicial impartiality is the hallmark of our adversary justice system. However, given the

\\\\\

[1] Any idea that pro se litigants have to follow the same rules as represented parties has long since been repudiated in the Ninth Circuit. See Carmen v. San Francisco Unified School Dist. 237 F.3d 1026, 1030 (9th Cir. 2001) stating the rule for represented parties: "Other circuits are not unanimous, but Forsberg is both binding on us and consistent with the majority view that the district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein."

jurisdictional problem that has arisen, i.e., the case or controversy has evaporated, the court need not tackle the evidentiary and merits issues.

Factual Background

Given that plaintiff proffers no list of disputed and undisputed facts, the court accepts most of defendants stated facts, but also with an eye to the non-adopted discrimination report of EEO officer Patricia Rodden- Kesner.

Plaintiff alleges discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112 et seq. based on defendants' failure to accommodate her disabilities, including a heart and back condition as well as cancer.

This action is proceeding on plaintiff's second amended complaint filed January 6, 2003. The defendants are Ken Miyao, Deputy Director of the California Department of Motor Vehicles (DMV), and Sue Ellen McHenry, Manager of the DMV.[2] Plaintiff is presently employed by the DMV. She alleges that she suffers from back problems, cardiac diseases and other medical problems including cancer. Plaintiff alleges that defendants have failed to accommodate her disabilities in violation of the Americans with Disabilities Act (ADA). In particular, plaintiff alleges that defendants failed to follow the recommendation of her doctor that she be permitted to walk at least every ten minutes to promote blood circulation and relieve back pain. As relief, plaintiff seeks an order directing defendants to "cease and desist" from discriminating against plaintiff.[3]

Plaintiff began her employment with the DMV in 1980. She transferred to the Lien Sale Unit (LSU) in 1994 where she worked as a Motor Vehicle Assistant. Her job duties as

---

[2] Also named as defendants in the second amended complaint are the California Department of Motor Vehicles and the Department of Motor Vehicles Lien Sales Department. These defendants have been dismissed.

[3] The court previously denied plaintiff's request for damages following those other circuits who have concluded that there is no Title I liability against individuals in their individual capacities who do not otherwise qualify as "employers" under the statutory definition. See Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 178 (3rd Cir. 2002)

a Motor Vehicle Assistant included: (1) processing applications for authorization for vehicles valued over $2500.00, which included proofreading the application to determine if all necessary information was present, reviewing documents for validity, correctness and compliance with the Vehicle and Civil Code sections and keying information into the Lien Sale Automated System to generate warning or invalid letters for 35 percent of her time; (2) opening, sorting, and distributing incoming mail for 20 percent of her time; (3) preparing appropriate correspondence and sending requests for forms and instructions to customers for 15 percent of her time; (4) proofreading lien sale oppositions and processes for ten percent of her time; (5) processing checks for eight percent of her time; (6) maintaining unit correspondence for five percent of her time; (7) verifying files for three percent of her time; and (8) keying word processing letters and excess monies into a personal computer for two percent of her time.

McHenry became the manager of LSU in August 1999 and was plaintiff's second-level supervisor. Lopez's first-level supervisors were Fran Jones and Mercedes Moroyoqui. McHenry learned that plaintiff was very often not at her work location. Lopez spent on average as much as three hours a day away from her unit. Other unit managers called McHenry to complain that plaintiff disrupted their units by talking to fellow employees and attempting to supervise them.

McHenry spoke to plaintiff about workplace expectations on September 13, 1999. During this meeting, Lopez requested modified duty and gave McHenry a note from a doctor stating that she should walk up to eight hours a day. (This doctor's order was ironic in that plaintiff had applied for, and received, a handicapped parking privilege based on a presumed mobility impairment). McHenry told plaintiff that she was not sure plaintiff's request could be granted in the LSU. Lopez then withdrew it since she did not want to leave LSU.

On October 20, 1999, Lopez's doctor provided her with two requests for the following accommodations: (1) use of an ergonomic chair; and (2) permission to walk around several times during the day and that plaintiff be permitted to sit or stand in order to relieve pain

(including use of a hi riser desk for this purpose). A second note from plaintiff's doctor dated October 21, 1999 clarified her earlier note by explaining that plaintiff needed to get up and down from her chair at least every ten minutes. This note also stated that if plaintiff could be permitted to do work that required walking for up to the entire day that would be ideal. Lopez gave these notes to McHenry on October 29, 1999, along with a note from another doctor dated May 6, 1999 suggesting that plaintiff should not be sedentary for long periods of time and needed regular exercise.

Since Lopez was already allowed to sit or stand to do her job and was using a hi-riser desk, ergonomic chairs were brought in for her use to provide further accommodations to her, which she refused; McHenry then sent plaintiff to the store which supplies ergonomic chairs for DMV so that she could be properly fitted for a chair of her choice; plaintiff did not like the salesperson and refused to select a chair.

McHenry wrote a letter to plaintiff's doctor regarding her notes of October 20 and 21, 1999 and seeking additional clarification regarding plaintiff's need to walk around. McHenry also sent the doctor a questionnaire and requested a physical examination of plaintiff for an evaluation of her ability to perform her job duties. McHenry also explained that plaintiff refused to select an ergonomic chair as described in the doctor's earlier note regarding accommodations. The doctor, however, did not respond.

On December 1, 1999, plaintiff was given a reasonable accommodation form.

Lopez filed a workers' compensation claim for stress from a job-related injury (which occurred on May 6, 1999) on December 16, 1999. The claim was ultimately denied.

Meanwhile, plaintiff's doctor, Jack Casas, gave Lopez a note on January 26, 2000 stating that it would improve plaintiff's health to assign her a job that would allow her to walk to other buildings. Walking was already a part of the work expectations given to plaintiff for 30 minutes of plaintiff's time each day.

\\\\\

Lopez then filed a second workers' compensation claim for stress on February 2, 2000, which was later denied. Meanwhile, McHenry wrote a memorandum to plaintiff requesting that plaintiff return the reasonable accommodation form on February 9, 2000.

Plaintiff gave McHenry the reasonable accommodation request form on February 16, 2000. She requested that she be allowed to be mobile every ten minutes up to walking the entire day.

After receiving plaintiff's request form, McHenry wrote a letter to plaintiff's doctors, Dawn Glore and Jack Casas, on February 16, 2000, requesting information regarding plaintiff's physical workplace restrictions. She also sent a letter to her supervisor, Gary Murata, recommending approval of a reasonable accommodation for plaintiff. McHenry specifically recommended that plaintiff be placed in a unit where extensive walking was available, since such an accommodation could not be made in the LSU.

Plaintiff was examined by Dr. Robert K. Henrichsen, an orthopedic specialist, on March 2, 2000. He opined that plaintiff could continue her regular work and recommended stretching and reasonable activity. On March 7, 2000, plaintiff was examined by Dr. Thomas E. Leonard, a specialist in internal medicine and cardiology. He opined that plaintiff suffered from no permanent disability.

On March 9, 2000, plaintiff filed a joint complaint with the Department of Fair Employment and Housing and the Equal Employment Opportunity Commission.[4] The only

---

[4] This complaint names the DMV as the "employer, person, labor organization, employment agency, apprenticeship committee, or state or local government agency" who discriminated against plaintiff. The section of the complaint describing plaintiff's complaint states as follows:

> I. On September 13, 1999, I was denied a reasonable accommodation based on my doctor's request. I was hired in 1981 and currently I am a Motor Vehicles Assistant earning $27,000 annually.
>
> II. Sue Ellen McHenry, Manager, told me that I must resume all duties if a doctors' request was not received.
>
> III. I believe that I have been denied an accommodation and harassed based on my disability (cardiac disease) for the following reasons:

disability listed in that complaint by plaintiff is for a cardiac problem. Plaintiff then received a right to sue letter from the EEOC.

In the meantime, McHenry wrote another letter to plaintiff's doctors requesting information relating to plaintiff's job restrictions in March 13, 2000. Glore refused to provide any documents and told McHenry that she provided enough information. Meanwhile, plaintiff was seen by Dr. Edward Duncan, a licensed psychologist at the Stress Management Institute, on March 15, 2000. He concluded that there were no psychological symptoms that would prevent the plaintiff from working as a Motor Vehicle Assistant.

McHenry wrote plaintiff a memorandum on March 16, 2000 notifying Lopez of her temporary job assignment to assist with the filing system in another unit. On March 20, 2000, McHenry wrote a memorandum to plaintiff explaining that her doctors had not responded to requests for information and she did not have adequate information to allow plaintiff's requested accommodation in the LSU. Later that month, McHenry notified plaintiff that inquiries were being made for a position at plaintiff's division and department level. At this point, McHenry no longer participated in plaintiff's request for a reasonable accommodation, which was now being handled by Jim Yonce and Gary Murata. On April 28, 2000, notice was sent to plaintiff from the Health Management Unit that there was no information in her request and that her doctor's notes do not clearly indicate what her medical condition permits plaintiff to

---

A. I have presented numerous doctors notes to my manager explaining my need for an accommodation only to have them returned to me because they were not signed.
B. I have been requested to perform duties in contrast with my doctor's recommendation.
C. Although I have provided doctor's notes for my absences (copies on file with DFEH), I have received written warnings stating that I will endure adverse action unless I provide such notes.
D. I have been instructed not to speak to other employees unless a supervisor has referred them to me. Also, I have been instructed that I will be escorted to other units when I must report there for work.
E. When other employees attended a retirement party for a co-worker, I was instructed to report to another unit to work , because I could not be left alone in my unit.

do and what limitations were present. Plaintiff was then temporarily assigned to the Special Projects Unit (SPU). On September 26, 2000, McHenry was transferred to manage the SPU.

Plaintiff does not submit evidence of her disability; nor does she submit evidence independent of a report to demonstrate an unreasonable lack of accommodation. Rather, she relies exclusively on the unauthenticated[5] discrimination report of Ms. Rodden-Kessner which comes to stark, even startling conclusions.

> The investigation reveals that the Complainant is a "qualified individual with a disability" as defined by Title I of the ADA, as amended, FEHA and Government Code Section 12940, and therefore entitled to reasonable accommodation. The department provided a reasonable accommodation to Complainant in 1994 and in 1997. When McHenry began working as a manger in the Lien Sales Unit on August 24, 1999, she knowingly and deliberately failed to accommodate Complainant by revoking the accommodation that had been previously provided in or around October 1999. Upon receipt of a new request for reasonable accommodation dated February 9, 2000, McHenry, through manipulation of specific information, insured that Complainant's request would be denied. McHenry deliberately and knowingly placed Complainant in a position, contrary to her physician's recommendations that had the potential to cause an already serious health condition to worsen.
>
> In addition, the investigation reveals that McHenry created a hostile work environment for Complainant by the constant attention focused on her, as well as the inordinate amount of documentation compiled during the time period in question. Much of it being redundant and unwarranted.
>
> Furthermore, McHenry provided false and misleading statements and documentation to the DCCO investigation while attempting to explain her actions.
>
> ***
>
> The findings of the investigation show that McHenry knowingly and willfully violated the department's Reasonable Accommodation Policy and procedures as well as the department's Equal Employment Opportunity (EEO) Policy.

Exhibit 1 to Plaintiff's Opposition.

---

[5] In her most recent declaration, plaintiff does supply an unsworn copy of a letter from Ms. Rodden-Kessner stating that the report is her report.

Ms. Rodden-Kessner sought to have Ms. McHenry fired or other wise severely disciplined as a result of her found actions.

However, the report also provides that:

> Although steps have been taken to correct McHenry's actions and Ms. Lopez is now being provided a reasonable accommodation and is no longer being subjected to a hostile work environment, additional steps should be taken to insure that incidents such as this do not happen again.

Exhibit 1 at 2.

Defendants provide evidence that the Rodden-Kessner report was disavowed and never adopted by the agency. A second report was prepared and the DMV found no actionable discrimination. Declaration of Renee Carter filed signed April 19, 2005.

Discussion

Plaintiff's sole remaining injunctive relief claim is moot, and this court has lost jurisdiction. As recorded above, plaintiff cannot maintain a damages action in this case. Her sole requested relief at this point is against two, lower or mid-level DMV supervisors on a complaint that is time limited (October 1999-March 2000). She asks that these supervisors: "develop and implement an effective written policy against discrimination based on physical disabilities," and "provide adequate training to their employees regarding the proper procedures to work with employees with disabilities." Plaintiff does not allege that she suffers any type of ongoing problem with these supervisors. Dispositively, plaintiff has not contested the fact that these two supervisors are not authorized by DMV to issue any policy pronouncements on the part of the agency. Undisputed Facts 44 and 45. All DMV employees receive training already on all important aspects of anti-discrimination law. Undisputed Facts 42 and 43.

> The twin pillars of standing and "case or controversy" go to the heart of Article III jurisdiction. The corollary to these principles is that federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists. Mootness can be characterized as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence

> (mootness)." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). "Mootness, like the related doctrine of standing, restricts judicial power to the decision of cases and controversies, so that our elected government retains the general power to establish social policy." Nome Eskimo Community v. Babbitt, 67 F.3d 813, 815 (9th Cir.1995) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Cook Inlet Treaty Tribes v. Shalala, 166 F.3d 986, 989 (9th Cir. 1999). A bright line indicator for mootness is the ability of the court to grant "effective relief." Id. citing cases. Such is the situation here. The two lower or mid-level supervisors cannot issue edicts on behalf of the DMV, and further training edicts would be redundant. This court does not have the authority to punish individual defendant employees with loss of jobs or "probation like" mandated training. This is so especially where plaintiff does not relate ongoing problems with the individual defendants.

No live case or controversy exists.

Conclusion

Accordingly, this case should be dismissed for lack of jurisdiction.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are

\\\\\

\\\\\

\\\\\

\\\\\

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 6/30/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH:lopez0274.fr